UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 08-177-GWU

LEROY PRATER, JR., PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Leroy Prater brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Prater, a 37-year-old former security guard, coal mine "outsideman," truck driver and laborer with a high school education, suffered from impairments related to right renal artery stenosis with right hypoplastic kidney, chronic pain syndrome, chronic obstructive pulmonary disease, accelerated hypertension, mitral valve regurgitation, a dysthymic disorder, generalized anxiety disorder and pain disorder. (Tr. 17, 25-26). While the plaintiff was found to be unable to return to any of his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 21, 25). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 26-27). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 26).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Gina Baldwin included an exertional limitation to light level work, restricted from a full range by such non-exertional limitations as a limitation to simple, routine, non-public work settings and the "moderate" limitations found in Exhibit 2F.[1] (Tr. 455). Baldwin identified a significant number of jobs in the national economy which could still be performed. (Tr. 456). The ALJ then changed the mental factors to include a "poor" ability to deal with work stresses, maintain attention and concentration, handle complex instructions and demonstrate reliability. (Tr. 457). The witness testified that these factors would reduce the aforementioned job base by approximately 40 percent but that a significant number of jobs would remain. (Id.). Therefore, assuming that the vocational factors considered by Baldwin fairly characterized Prater's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The ALJ dealt properly with the evidence of record relating to Prater's mental condition. Psychologist Timothy Carbary examined the plaintiff and diagnosed a dysthymic disorder, a generalized anxiety disorder, a pain disorder and a somatoform disorder. (Tr. 438). Carbary indicated that the claimant would have a

---

[1]These restrictions from Medical Reviewer Ilze Sillers included a "moderate" restriction of ability to maintain attention and concentration for extended periods, to interact appropriately with the general public, and to respond appropriately to changes in the work setting. (Tr. 156-157).

"poor" ability to deal with work stresses, maintain attention and concentration, handle complex instructions, and demonstrate reliability. (Tr. 440-441). The vocational expert indicated that a significant number of jobs could still be performed when these limitations were presented by the ALJ. Psychologists Ilze Sillers (Tr. 156-157) and Jay Athy (Tr. 275-276), the non-examining medical reviewers, each opined that Prater would be "moderately" limited in maintaining attention and concentration, interacting with the general public and responding appropriately to changes in the work setting. These were also considered by the vocational expert who found that work could still be done. The plaintiff sought treatment for his mental problems at the Mountain Comprehensive Care Center (Tr. 303-345). Specific mental limitations were not assessed. Prater's Global Assessment of Functioning (GAF) was rated at 70. (Tr. 321). Such a GAF suggests the existence of only "mild" psychological limitations according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. These reports provide substantial evidence to support the denial decision.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Roy Stauffer, an examining consultant, diagnosed hypertension, right renal artery stenosis with hypoplastic right kidney, right knee pain secondary to an old fractured patella, low back pain and

chronic obstructive disease. (Tr. 380). Dr. Stauffer opined that Prater would be able to perform the full range of light level work with no postural, manipulative or environmental restrictions. (Id.). The ALJ's findings were compatible with this opinion. More severe physical limitations than those found by the ALJ were not identified by such treating and examining sources as Dr. Osaid Ahmad (Tr. 151-155), Dr. Vellaiappan Somasundaram (Tr. 253-262), Dr. Arif Goreja (Tr. 346-368), and Dr. Louis Molina (Tr. 382-402). These reports provide substantial evidence to support the administrative decision.

Dr. Ashok Patnaik, a treating source, opined in September of 2005 that Prater would be "considered disabled at this time." (Tr. 370). This is an opinion reserved to the Commissioner under the federal regulations and, so, was not binding on the ALJ. 20 C.F.R. § 404.1527(e)(1). The ALJ rejected this opinion for this reason and because he did not believe Dr. Patnaik's opinion was supported by sufficient objective medical evidence. (Tr. 22). The physician cited "wide blood pressure fluctuations" as a reason for disability. (Tr. 370). The ALJ noted that recent medical evidence revealed improved blood pressure management. (Tr. 22, 383). Cardiac catheterization by Dr. Patnaik revealed normal coronary arteries and no more than a moderate degree of mitral valve regurgitation. (Tr. 22, 192). Therefore, the ALJ dealt properly with Dr. Patnaik's opinion.

Dr. Joseph Koenigsmark, an examining consultant, indicated that Prater would have some degree of restriction in lifting. (Tr. 178). While Dr. Koenigsmark found no significant abnormality with regard to sitting, standing and moving about, the doctor indicated that a sit/stand option "could be considered." (Id.). This rather vague restriction was not included by the ALJ in his findings. This opinion would be offset by that of Dr. Stauffer to the extent it might suggest the need for more severe physical restrictions than those presented in the hypothetical question.

Dr. Allen Dawson (Tr. 243-252) and Dr. John Rawlings (Tr. 294-302), the non-examining medical reviewers, each indicated that Prater was limited to light level work restricted from a full range by an inability to more than occasionally climb ladders, ropes or scaffolds and to be exposed to vibrations and environmental pollutants. These are more severe physical restrictions than those found by the ALJ. The administrative regulations provide that "generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). Therefore, the opinions of the reviewers were outweighed by that of Dr. Stauffer.

Finally, Teresa Robinson, a nurse-practitioner, identified a number of severe physical restrictions on a Medical Assessment of Ability to do Work-Related Activities Form. (Tr. 263-266). However, a nurse-practitioner is not an "acceptable

medical source" under the federal regulations at 20 C.F.R. § 404.1513 and the ALJ rejected her opinion. (Tr. 23). This action was appropriate.

Prater argues that the federal regulations required the ALJ to seek information from his own medical sources and should only have sought a consultative examination after reasonable efforts to obtain the information from these treating sources had failed. The plaintiff cites 20 C.F.R. § 404.1512(d)(2) for this proposition. However, this section deals with the issue of what constitutes a "complete medical record." The claimant appears to have meant to rely upon 20 C.F.R. § 404.1512(e)(1) which deals with the duty to recontact a treating physician. Section 404.1512(e)(1) provides that an ALJ should seek clarification from a treating source who has issued an incomplete or ambiguous opinion, does not contain all the necessary information, or the report does not appear to be based upon acceptable clinical or laboratory techniques.

The case law on this question is very sparse. The Sixth Circuit Court of Appeals, in the unpublished opinion of Littlepage v. Chater, 1998 U.S. Lexis 688 (6th Cir. January 14, 1998), determined that this duty to recontact a treating source was not triggered when it was apparent from the record that all of the treatment notes and information upon which the doctor based his opinion were already before the ALJ. The court finds this persuasive authority.

In the present action, Prater asserts that the ALJ should have recontacted Dr. Patnaik. However, the record does not suggest that the physician based his opinion on records not before the ALJ. The plaintiff has not asserted that the physician's reports were ambiguous or incomplete, did not contain all the necessary information or were based upon unacceptable clinical or laboratory techniques. Therefore, the court rejects Prater's argument.

Prater also argues that the ALJ erred in failing to ask Dr. Patnaik to perform the consultative examination. The plaintiff cites 20 C.F.R. § 404.1519h which provides that:

> When in our judgment your treating source is qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment, and generally furnishes complete and timely reports, your treating source will be the preferred source to do the purchased examination.

This section, while indicating that the treating physician is preferred, does not mandate that the treating source perform the consultative examination. The ALJ appears to have some discretion in deciding whether to utilize the services of the treating physician. Since the decision is discretionary rather than mandatory, the current ALJ did not have to choose Dr. Patnaik for the consultative examination. Therefore, the court finds no reversible error.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment and

deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 19th day of August, 2009.

**Signed By:**

***G. Wix Unthank*** *GWU*

**United States Senior Judge**